IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SEAN BELL                          :
    Plaintiff              :
                           : JURY TRIAL DEMANDED
v.                                 :
                           : CASE NO.:
WEIS MARKETS, INC.                 :
    Defendant              :

## COMPLAINT

Plaintiff Sean Bell ("Mr. Bell") by his attorney, George R. Barron, Esquire, for his Complaint alleges as follows:

## INTRODUCTION

1. In early 2019, Mr. Bell began to lose his ability to stand and walk.

2. Despite his struggles, Mr. Bell continued to work as a Grocery Department Manager with Defendant Weis Markets Inc. ("Weis"), using shopping carts and other means to assist his mobility as needed.

3. In November 2019 Mr. Bell was hospitalized, and learned that his loss of ability to stand and walk was the result of diabetic neuropathy and atrophy caused by his Type 1 diabetes.

4. Upon his release from the hospital in December 2020, Mr. Bell could not stand or walk, but like thousands of other Americans with mobility

challenges, Mr. Bell was willing and able to return to work and earn a livelihood despite his disability.

5. Rather than welcome Mr. Bell back to work, Weis refused to reinstate, and ultimately terminated, Mr. Bell's employment solely because Mr. Bell was unable to stand and walk.

6. Weis categorically excludes individuals who are unable to stand and walk from employment as Grocery Department Managers (and, upon information and belief, other employment positions) in their grocery stores, in violation of the law.

7. Weis's belief that Mr. Bell's inability to stand and walk made him unfit for employment was so absolute and unwavering that Weis made no effort whatsoever to accommodate Mr. Bell, and told Mr. Bell "we can't have you rolling around here in a wheelchair."

PARTIES

8. Mr. Bell is an adult resident of East Bangor, Pennsylvania.

9. Weis is, upon information and belief, a Pennsylvania Business Corporation with a legal address of 1000 South Second Street, P.O. Box 471, Sunbury, PA 17801-0471, and a place of business at 1321 Blue Valley Dr., Pen Argyl, Pennsylvania, 18072.

## JURISDICTION

10. This action for declaratory, injunctive, monetary and other appropriate relief is brought by Mr. Bell against Weis to redress intentional violations by Weis of rights secured by the laws of the United States and the statutory and common law of the Commonwealth of Pennsylvania.

11. Weis wrongfully discriminated against, wrongfully terminated, and unlawfully deprived Mr. Bell of his rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, ("FMLA"), the Americans with Disabilities Act of 1990 ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. §951-963 *et seq.*, ("PHRA").

12. This Court has jurisdiction over this action pursuant to, *inter alia*, 28 U.S.C. §§1331 and 1367. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b) because most of the events and omissions complained of occurred in this judicial district.

13. Mr. Bell filed a timely Charge of Discrimination regarding these claims with the Equal Employment Opportunity Commission ("EEOC") on September 29, 2020.

14. Mr. Bell requested that the EEOC dual-file his Charge of Discrimination with the Pennsylvania Human Relations Commission.

15. Mr. Bell received a "Right to Sue" letter from the EEOC on January 29, 2021.

16. Mr. Bell has exhausted his administrative remedies with regard to his ADA claims.[1]

STATEMENT OF FACTS

17. Mr. Bell was employed by Weis for approximately ten (10) years, most recently as a Grocery Manager at the Weis Market in Pen Argyl.

18. At all times relevant hereto, Mr. Bell's immediate supervisor was Jeffery Norton ("Mr. Norton"), the Store Manager at the Weis Market in Pen Argyl.

19. At all times relevant hereto, Mr. Norton was an agent of, and was acting on behalf of, Weis.

20. Mr. Bell is a Type 1 insulin dependent diabetic.

21. Beginning in or around November 2018, Mr. Bell began to suffer weakness and pain in his back and legs.

22. The weakness and pain in Mr. Bell's back and legs became progressively worse over the following months.

23. By April 2019, the weakness and pain in Mr. Bell's back and legs had progressed to the point that he started having difficulty standing and walking, and began falling as a result.

---

[1] Mr. Bell intends to amend this Complaint to add counts under the PHRA when the administrative exhaustion requirement for those claims is met.

24. The weakness and pain in Mr. Bell's back and legs further progressed to the point that Mr. Bell began to lose the ability to stand and walk.

25. After Mr. Bell lost the ability to stand and walk, he used regular shopping carts, motorized shopping carts, and crutches to move around the workplace and perform his job as Grocery Manager.

26. In or around Summer 2019, Mr. Norton moved Mr. Bell to afternoon shifts, generally 2:30 p.m. to 11 p.m.

27. Mr. Norton later told Mr. Bell that he changed Mr. Bell's schedule so that Mr. Bell wouldn't "be seen as weak if corporate came in" to visit the store during the day.

28. When Mr. Bell started using regular shopping carts, motorized shopping carts, and crutches to move around the workplace, Mr. Norton and Weis's other managers began to call Mr. Bell "Hot Wheels" and teased him about "always being on his ass" at work because he could not stand or walk.

29. This harassment caused Mr. Bell to suffer significant emotional distress, embarrassment and anxiety.

30. In November 2019, the weakness and pain in his back and legs compelled Mr. Bell to seek medical treatment, and he was hospitalized for approximately five (5) weeks.

31. During his hospitalization, Mr. Bell was diagnosed with diabetic neuropathy and atrophy caused by his Type 1 diabetes, a condition that Mr. Bell's physicians hoped would eventually resolve.

32. Mr. Bell's disabilities, Type 1 diabetes and diabetic neuropathy and atrophy, significantly impair his ability to, *inter alia,* stand, walk, run, move, produce insulin, and perform some work.

33. Mr. Bell was released from the hospital on or about December 7, 2019.

34. Mr. Bell's medical leave was protected under the Family and Medical Leave Act ("FMLA").

35. At the time of his release from the hospital, Mr. Bell was unable to independently stand or walk.

36. At the time of his release from the hospital, Mr. Bell used a wheelchair for mobility.

37. Despite his inability to stand or walk, Mr. Bell was able and willing to perform the essential functions of his job as Grocery Manager, with the reasonable accommodation of being permitted to use his wheelchair.

38. On or about December 8, 2019, Mr. Bell called Mr. Norton and told Mr. Norton that he could return to work, but that he could not stand or walk and that he now used a wheelchair for mobility.

39. Mr. Norton told Mr. Bell that Weis would not permit him to return to work, and would not reinstate him to his position.

40. Mr. Norton stated on behalf of Weis that Weis did not want Mr. Bell back until he was "100%" and no longer needed a wheelchair.

41. Mr. Norton stated on behalf of Weis that Weis's management would not want him working in the store while using a wheelchair, stating "we can't have you rolling around in a wheelchair" in the store.

42. Between December 2019 and May 2020, Mr. Bell regularly communicated with Weis regarding his employment, informing them that he still could not stand or walk.

43. On each of those occasions, Mr. Bell reiterated his desire to return to work, and Weis reiterated its position that Mr. Bell could not return to work until he was "100%" and able to walk.

44. Between approximately December 2019 and May 2020, Mr. Bell remained on unpaid leave from work, hoping that his condition would improve enough that he would be able to stand and walk, and be permitted to return to his job with Weis.

45. On or about May 10, 2020, Shawn Sowers ("Mr. Sowers"), Weis's District Human Resources Manager, told Mr. Bell in a phone call that Weis "waited long enough for you to get better" and "we are going to move on".

46. Weis terminated Mr. Bell's employment on or about May 10, 2020.

47. Mr. Bell applied for and was approved for Unemployment Compensation benefits after Weis terminated his employment.

48. Upon information and belief, Weis did not challenge Mr. Bell's eligibility for Unemployment Compensation benefits.

49. Weis made no effort whatsoever to provide Mr. Bell with reasonable accommodations that would allow him to return to his job as Grocery Manager.

50. Weis terminated Mr. Bell's employment because it did not want to have an employee using a wheelchair in its stores.

51. The harassment and other discriminatory treatment of Mr. Bell by agents, management staff and employees of Weis, beginning in or about April 2019 and culminating in Weis's termination of Mr. Bell's employment, constituted a continuing course of action.

## COUNT ONE
## INTERFERENCE IN VIOLATION OF THE
## FAMILY AND MEDICAL LEAVE ACT

52. All previous paragraphs are incorporated herein and referenced as if set forth in full.

53. Weis is a "covered employer" under the FMLA.

54. At the time of his hospitalization, Mr. Bell was an "eligible employee" under the FMLA.

55. Mr. Bell's Type 1 diabetes and diabetic neuropathy and atrophy were serious health conditions.

56. Weis did not request that Mr. Bell provide any medical certification or undergo any fitness-for-duty examination before returning to work following his hospitalization.

57. Rather, Weis simply refused to reinstate Mr. Bell to the position of Grocery Manager as required by 29 CFR § 825.214.

58. Weis unlawfully and willfully interfered with Mr. Bell's rights under the FMLA.

59. Weis's interference with Mr. Bell's FMLA rights was not in good faith, and Weis did not have reasonable grounds for believing that its acts or omissions were not a violation of the FMLA.

60. As a result of Weis's unlawful acts, Mr. Bell has suffered, and continues to suffer, harm.

## COUNT TWO
## RETALIATION IN VIOLATION OF THE
## FAMILY AND MEDICAL LEAVE ACT

61. All previous paragraphs are incorporated herein and referenced as if set forth in full.

62. Mr. Bell exercised his FMLA rights by requesting and using FMLA-protected leave.

63. Mr. Bell exercised his FMLA rights by requesting that Weis reinstate him to his position as Grocery Manager at the conclusion of his FMLA-protected leave.

64. Weis retaliated against Mr. Bell for engaging in these protected acts by terminating his employment.

65. Mr. Bell's exercise of his FMLA rights was a motivating factor in Weis's decision to terminate his employment.

66. Weis unlawfully and willfully violated Mr. Bell's rights under the FMLA.

67. As a result of Weis's unlawful acts, Mr. Bell has suffered, and continues to suffer, harm.

## COUNT THREE
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

68. All previous paragraphs are incorporated herein and referenced as if set forth in full.

69. As set forth above, Mr. Bell was an individual with a disability.

70. At all times relevant, Weis and its agents regarded Mr. Bell as disabled.

71. As set forth above employees and management staff of Weis subjected Mr. Bell to offensive conduct including cruel jokes, ridicule, and public embarrassment because Mr. Bell is and was regarded as an individual with a disability.

72. Enduring the offensive conduct was a condition of Mr. Bell's continued employment with Weis.

73. The offensive conduct was severe and pervasive enough to create a work environment that any reasonable person would consider to be intimidating, hostile, and abusive.

74. Weis's management personnel knew of and participated in this offensive conduct, and did nothing to stop it.

75. As a result of Weis's unlawful acts, Mr. Bell has suffered, and continues to suffer, harm.

76. As set forth herein, Weis and its agents violated Mr. Bell's rights under, *inter alia,* the Americans with Disabilities Act.

## COUNT FOUR
## UNLAWFUL DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

77. All previous paragraphs are incorporated herein and referenced as if set forth in full.

78. As set forth above, Mr. Bell was an individual with a disability.

79. At all times relevant, Weis and its agents regarded Mr. Bell as disabled.

80. Weis terminated Mr. Bell's employment specifically because Mr. Bell was an individual with a disability, *i.e.* because Mr. Bell, as a result of his disabilities, was unable to stand or walk.

81. Mr. Bell's disabilities were a contributing factor in Weis's decision to terminate his employment.

82. Mr. Bell's disabilities were a motivating factor in Weis's decision to terminate his employment.

83. Based upon the foregoing, Mr. Bell alleges that Weis violated the Americans with Disabilities Act.

84. As a result of Weis's unlawful acts, Mr. Bell has suffered, and continues to suffer, harm.

## COUNT FIVE
### FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

85. All previous paragraphs are incorporated herein and referenced as if set forth in full.

86. As set forth above, Mr. Bell was an individual with a disability.

87. Mr. Bell was at all times relevant, and remains, able to perform the essential functions of his job as Grocery Manager, with or without reasonable accommodations.

88. Mr. Bell's physician described Mr. Bell's limitations in a letter to Weis as "The following restrictions will apply: Not able to stand."

89. Weis concluded, based solely upon Mr. Bell's inability to stand (and walk), that Mr. Bell was unable to perform the "essential functions" of the Grocery Manager position.

90. Weis made no effort whatsoever to accommodate Mr. Bell's disabilities, and refused to even discuss accommodations with Mr. Bell or engage in the interactive process required by law.

91. Weis could have accommodated Mr. Bell's disabilities with a minimum of inconvenience by simply permitting Mr. Bell to use his wheelchair at work, and Mr. Bell repeatedly requested this accommodation.

92. Rather than engage in the interactive process required by law, Weis imposed a "100% healed" policy that categorically excluded Mr. Bell from the workplace because he could not stand or walk.

93. Upon information and belief, Weis categorically excludes individuals with mobility disabilities from employment without engaging in the legally required interactive process to identify and implement accommodations.

94. Based upon the foregoing, Mr. Bell alleges that Weis violated the Americans with Disabilities Act.

95. As a result of Weis's unlawful acts, Mr. Bell has suffered, and continues to suffer, harm.

## PRAYER FOR RELIEF

96. Since his employment was terminated, Mr. Bell has suffered lost wages, lost employment opportunities, and loss of other fringe benefits. In addition, Mr. Bell has suffered and will continue to suffer severe emotional and physical distress.

WHEREFORE, Mr. Bell respectfully requests that this Court:

(a) Enter a declaratory judgment that Weis's actions, policies, practices and procedures complained of herein have violated and continue to violate the rights of Mr. Bell as secured by the statutes of the United States and the Constitution, statutes and common law of the Commonwealth of Pennsylvania;

(b) Require Weis to reinstate Mr. Bell to a position equivalent to that which he previously held and to restore Mr. Bell full income and benefits that he would have received had he not been the victim of Weis's unlawful acts, or, in the alternative, award to Mr. Bell front pay damages in an amount to be determined;

(c) Award to Mr. Bell damages for lost income and benefits at the same level as if he had been fully employed since his termination by Weis;

(d) Award to Mr. Bell liquidated damages pursuant to 29 USC 2617(a)(1)(A)(iii);

(e) Award to Mr. Bell damages in compensation for injuries including emotional distress, anguish and humiliation suffered by his, loss of his self-esteem and ability to provide himself with the rewards of his chosen career;

(f) Grant to Mr. Bell a judgment against Weis for punitive or exemplary damages in a monetary award in order to discourage future unlawful behavior on the part of Weis and other employers;

(g) Award to Mr. Bell costs, disbursements and reasonable attorney fees, and;

(h) Grant to Mr. Bell such additional relief as this Court deems just and proper.

## DEMAND FOR JURY

Mr. Bell demands a jury trial for all claims triable by a jury.

s/George R. Barron
George R. Barron, Esquire
Counsel for Plaintiff
PA ID. # 88747
88 North Franklin Street
Wilkes Barre, PA 18701
(570) 824-3088